[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 8, 2008
THOMAS K. KAHN
CLERK

————————————————

No. 08-10406
Non-Argument Calendar

————————————————

D. C. Docket No. 07-60245-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID M. BARON,

Defendant-Appellant.

————————————————

No. 08-10460
Non-Argument Calendar

————————————————

D. C. Docket No. 07-60027-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

M.D. DAVID BARON,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(July 8, 2008)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

In this consolidated appeal, David Baron, M.D., appeals his 25-month sentence for conspiracy to distribute pharmaceutical controlled substances, in violation of 21 U.S.C. § 846. Baron argues that: (1) the district court erred in denying his request for a minor-role reduction because it failed to compare his conduct with that of his more culpable codefendants; and (2) his within-Guidelines sentence was unreasonable. We find that Baron played a significant role in the conspiracy as a physician illegally approving online pharmaceutical requests. Moreover, his within-Guidelines sentence was reasonable. Accordingly, we AFFIRM.

## I. BACKGROUND

According to the presentence investigation report ("PSI"), Baron pled guilty to Count One of a 12-count indictment, and a single-count information originating

2

in the U.S. District Court for the Eastern District of Pennsylvania,[1] both counts alleging conspiracy to distribute Schedule III and IV pharmaceutical controlled substances, in violation of 21 U.S.C. § 846.  PSI ¶¶ 1-2.  Both counts arose out of an on-line scheme involving the illegal distribution of Schedule III and IV pharmaceutical substances, in which Baron and two other physicians reviewed customer questionnaires and approved or denied their on-line orders for prescription diet and sleeping pills.  Id. ¶¶ 9-13.  Baron authorized approximately 300 Schedule III prescriptions and 33,990 Schedule IV prescriptions, for which he received $314,015.  Id. ¶¶ 31-32.  The PSI noted that Baron had accrued "significant child support arrearages," including a balance of $297,402.28, and was reliant on his 82-year-old mother for full financial support.  Id. ¶¶ 100, 104.

The PSI assigned a base offense level of 20, which it reduced by 2 levels, for meeting the "safety valve" requirements.  Id. ¶¶ 54-55.  It then applied a two-level increase for Baron's use of a special skill in a manner that significantly facilitated the commission of the offense, and a three-level reduction for acceptance of responsibility.  Id. ¶¶ 57, 61-62.  Accordingly, the PSI assigned a total offense level of 17 and a criminal history category of I, yielding a guideline range of 24-30 months' imprisonment.  Id. ¶¶ 63, 66, 106.  Baron objected to, inter alia, the lack of

---

[1]The case was transferred to the Southern District of Florida.  R1-1.

a minor-role reduction and requested a downward variance, yielding a probationary sentence, based on consideration of the nature of the offenses, his personal characteristics, and the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, afford adequate deterrence, and protect the public. PSI Addendum; R1-9 at 1-8. Baron submitted various letters from family members and a coworker, attesting to his good character and work as a neurosurgeon, and a newspaper article featuring his work as a surgeon. See R1-9, Exhs. A-F.

At sentencing, Baron renewed his objection to the lack of a minor-role reduction, arguing that his role—reviewer of online requests for prescription drugs—was less than the roles played by the scheme's owners and operators, pharmacies, and pharmacy managers because he did not participate in the overall planning, decision-making, supervision, or recruiting, and he did not supply or distribute any drugs. R3 at 4-6. The government argued that the offenses could not have occurred but for his status as a licensed physician with a Drug Enforcement Administration ("DEA") registration, and a minor-role reduction would ignore the facade of legitimacy that he gave the illegal scheme. Id. at 6-7. Baron asserted that the government's "but for" analysis had been rejected by the courts. Id. at 8-9. The district court overruled Baron's objection, finding that

4

Baron occupied more than a minor role in the overall scheme. Id. at 9-10. In so doing, the court stated that it was adopting the statements of the prosecutor. Id. at 10.

Baron next argued that he truthfully admitted his conduct to DEA agents in 2004 and provided specific information about the scheme, which demonstrated his desire "to make amends." Id. at 12. Regarding his history and characteristics, Baron stated that he was 61 years old, had never been convicted of a crime, was divorced with 3 living children and 1 deceased child, and was caring, dedicated, hard working, and trustworthy, as demonstrated by the letters that he submitted. Id. at 13. He stated that he was living with his 82-year-old mother, who depended upon him on a daily basis. Id. at 13-14. Baron stated that he found himself before the court because he was "financially desperate" after losing his medical license in Florida and closing his practice. Id. at 15-16. He stated that he was depressed, unable to secure full-time employment, and dependent upon his elderly mother. Id. at 16. Baron requested a sentence of probation. Id. at 17.

The district court stated that it had considered the parties' statements, the PSI, the advisory guideline computation and range, and "all of the statutory factors." Id. at 23. It found that Baron met the safety-valve criteria, and, thus, imposed a sentence "in accordance with the advisory guideline range without regard to any

statutory minimum sentence." Id. at 24. The court then sentenced Baron to 25 months' imprisonment and 3 years' supervised release as to each count, to be served concurrently. Id. It stated that Baron's objection to the minor-role issue was renewed and its previous ruling remained the same. Id. at 26. When asked whether he had any objections to the court's findings of facts or conclusions of law, Baron replied that he did not, other than the renewed minor-role issue. Id. When asked whether he had any objection to the manner or procedure in which the sentence was imposed, he stated that he did not. Id. at 27.

## II. DISCUSSION

On appeal, Baron argues that the district court's cursory adoption of the government's arguments regarding the minor-role issue was insufficient because it failed to compare his conduct with that of his more culpable codefendants. He asserts that he: (1) had no equity interest in the overall scheme; (2) had no decision-making authority; (3) did not purchase and mail the drugs; and (3) did not recruit any participants.

A court's finding regarding a defendant's role in the offense is reviewed for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). The proponent of the reduction always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence. Id. at 939.

Pursuant to U.S.S.G. § 3B1.2(b), a defendant may receive a two-level reduction in his base offense level where his role in the offense was minor. See U.S.S.G. § 3B1.2(b). The district court's ultimate determination of the defendant's role in the offense should be informed by: (1) the defendant's role in the relevant conduct for which he has been held accountable at sentencing; and (2) his role as compared to that of other participants in his relevant conduct. De Varon, 175 F.3d at 940. "[W]here the relevant conduct attributed to a defendant is identical to her actual conduct, she cannot prove that she is entitled to a minor role adjustment simply by pointing to some broader criminal scheme in which she was a minor participant but for which she was not held accountable." Id. at 941. "In making the ultimate determination of the defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings. . . [and, s]o long as the district court's decision is supported by the record and the court clearly resolves any disputed factual issues, a simple statement of the district court's conclusion is sufficient." Id. at 939.

The district court was not required to articulate specific factual findings; its simple statement of its conclusion that Baron was not eligible for a minor-role reduction was sufficient. See De Varon, 175 F.3d at 939. The record supports the district court's conclusion, as the relevant conduct for which he was held

accountable was only the drugs that he illegally prescribed—not the broader criminal scheme, and he and the other physicians played a indispensable and significant role in the conspiracy by providing the illegal scheme with a facade of legitimacy that a non-doctor could not provide. See id. at 940-41; PSI ¶¶ 28-31, 45. Thus, we find no error in the district court's determination.

While conceding that the district court need not explicitly discuss each of the § 3553(a) factors, Baron asserts that the district court gave no specific reasons for imposing a within-Guidelines sentence and failed to address any of the "unique facts" of his case, despite his argument that the guideline sentence was greater than necessary to achieve the purposes of sentencing and his discussion of the facts of his case. Baron argues that a sentence within the guideline range was unreasonable, considering his personal characteristics and the nature of his crime. Specifically, he states that he: (1) had no criminal history; (2) was a respected neurosurgeon for many years who treated patients without regard for their ability to pay; (3) cares for his elderly mother; and (4) suffers from several medical conditions. Regarding the nature of the offense, he states that "he was not peddling more serious drugs," such as cocaine or heroin. Appellant's Brief at 16. Baron contends that he showed remorse, is unlikely to commit further crimes, and cooperated fully with law enforcement.

As an initial matter, we need not resolve whether Baron's failure to raise a reasonableness objection after his sentence was imposed mandates plain error review because, as discussed below, Baron cannot demonstrate any error by the district court, or that his sentence was unreasonable. After United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), a district court, in determining a reasonable sentence, must correctly calculate the sentencing range under the Guidelines and then consider the factors set forth in § 3553(a). See United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005). The Court has held that appellate courts must review all sentences under a deferential abuse-of-discretion standard. Gall v. United States, __ U.S. __, 128 S. Ct. 586, 591, 169 L. Ed. 2d 445 (2007). Although the district court must be guided by the § 3553(a) factors, we have held that "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). "[A]n acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient under Booker." Talley, 431 F.3d at 786.

The district court, in sentencing Baron, stated that it had considered the parties' statements, the PSI, the advisory guideline computation and range, and "all

of the statutory factors." See R3 at 23.  These acknowledgments were sufficient under Booker.  See Talley, 431 F.3d at 786.  Regarding Baron's discussion of specific factors, the guideline range took into account that he had no criminal history and that his offense involved "lesser" drugs, as the range was computed by assigning a criminal history category of I and basing the offense level on the type and amount of drugs involved.  See U.S.S.G. § 2D1.1(a)(3), (c); PSI ¶¶ 54, 66.  Moreover, his personal characteristics, consisting of his status as a formerly respected neurosurgeon who currently suffers medical conditions and cares for his elderly mother, are not so weighty or of a character that the district court's decision not to vary below the Guideline range after considering them could constitute error or abuse of discretion.  Accordingly, Baron's sentence was reasonable.

### III. CONCLUSION

The district court's sentence in this case is due to be affirmed based upon a thorough review of the record.  Baron, a licensed physician holding a DEA registration, played a significant role in the conspiracy to distribute online pharmaceutical requests illegally.  Also, his sentence was within the applicable Guidelines range.   Accordingly, we **AFFIRM.**